**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CORRY M. BROOKS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-4535** |
| | : | |
| **CHERL STEBERGER,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

PADOVA, J.                                                    JANUARY 4, 2024

Plaintiff Corry M. Brooks, a pretrial detainee currently confined at Lancaster County Prison ("LCP"), filed this *pro se* action alleging violations of his civil rights.  Brooks seeks leave to proceed *in forma pauperis*.  Named as Defendants are: Warden Cherl Steberger[1] and PrimeCare Medical, Inc. ("PrimeCare").  For the following reasons, Brooks will be granted leave to proceed *in forma pauperis* and the Complaint will be dismissed without prejudice.  Brooks will be given an opportunity to cure the noted deficiencies by filing an amended complaint.

## I.   FACTUAL ALLEGATIONS[2]

Brooks alleges that his rights were violated from July 22 to July 28, 2023, while housed on the top tier of the G-2 unit at LCP.  (Compl. at 3, 4, 7-8.)  He contends that due to the contaminated water supply at LCP, he became ill and was subsequently diagnosed with "pneumonia/legionella."  (*Id.* at 3, 7-9.)  According to Brooks, he filled out a sick call request on July 24, but it is unclear "when the telephone call to the medical [department] was made."  (*Id.*

---

[1] It appears that Brooks has misspelled the name of LCP Warden Cheryl Steberger.  We use the spelling from the Complaint throughout this Memorandum and the accompanying Order.  We expect that this would be corrected in any amended complaint Brooks chooses to file.

[2] The allegations set forth in this Memorandum are taken from the Complaint.  (*See* ECF No. 2.)  The Court adopts the pagination supplied by the CM/ECF docketing system.

at 8.)  He was escorted to the medical department on July 28 between 2:00 and 4:00 p.m. and was transported to Lancaster General Hospital between 4:30 and 5:30 p.m. that same day.  (*Id.*)  Brooks claims that he "began experiencing a severe headache, which then progressed from alternating symptoms of rapid chills on to profusely sweating for hours with each of these symptoms."  (*Id.*)  He alleges that he was delirious, had a loss of balance, loss of appetite, and lost approximately ten to fifteen pounds, as well as experienced coughing, vomiting, and diarrhea.  (*Id.*)  His symptoms increased each day they were left untreated.  (*Id.*)  As alleged, other inmates became aware of Brooks's illness and alerted staff of the seriousness of his condition and inability to eat.  (*Id.*)  The Housing Unit Counselor, Mr. Mosely, was alerted to the situation and informed a prison investigator, Mr. Hackler, of Brooks's decline.  (*Id.* at 9.)  Mr. Hackler relayed the information to medical personnel and asked that Brooks be evaluated.  (*Id.*)  A Ms. Storm determined that Brooks should be transported to the hospital for evaluation.  (*Id.*)  After evaluation at the hospital, Brooks was diagnosed with "pneumonia/legionella" and was prescribed antibiotic medication.  (*Id.*)

Brooks alleges that Warden Steberger is responsible for the overall operations and functions of LCP, as well as for the welfare of the inmates.  (*Id.* at 4.)  He also claims that she "acted with gross negligence by allowing the [facility's] water system to become contaminated, which caused [Brooks] to contract a form of pneumonia, later found out to be Legionella/Legionnaires Disease."  (*Id.* at 6.)  Brooks further asserts that Defendant PrimeCare provides medical care at LCP, but acted with deliberate indifference by failing "to respond to [Brooks's] urgent request for medical treatment due to being understaffed."  (*Id.* at 4, 6.)  Brooks contends that when his symptoms worsened, he requested that an immediate call be placed to the medical department.  (*Id.* at 6.)  As alleged, the nurse who responded and assessed Brooks

claimed that he was dehydrated and gave Brooks a cup of water and a cup of Gatorade, along with Motrin, which was unhelpful.  (*Id.*)  According to Brooks, no further tests were performed at that time because the medical department did not have sufficient supplies to treat him.  (*Id.*)

Brooks contends that he continues to suffer the physical and mental effects of his illness, and suffers from both dehydration and anxiety as a result of his hesitancy to drink or shower for fear of falling ill again.  (*Id.* at 9-10.)  He seeks monetary damages for his claims, including $1.5 million in compensatory damages and $5 million in punitive damages.  (*Id.* at 10.)

## II.    STANDARD OF REVIEW

The Court grants Brooks leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  "At this early stage of the litigation," the Court will "accept the facts alleged in [the *pro se*] complaint as true," draw "all reasonable inferences in [the plaintiff's] favor, and ask only whether [the] complaint, liberally construed, . . . contains facts sufficient to state a plausible

---

[3] Because Brooks is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

[] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (internal quotations omitted)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678 (citation omitted).

The Court construes the allegations of a *pro se* complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citation omitted). "This means we remain flexible, especially 'when dealing with imprisoned pro se litigants[.]'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.    DISCUSSION

Brooks asserts constitutional claims and a state law negligence claim based on his exposure to the contaminated water supply at LCP and his resultant illness. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

4

Brooks seeks to assert Eighth and Fourteenth Amendment claims for deliberate indifference to his serious medical needs, as well as a state law claim for negligence. (*See* Compl. at 3-4.)[4]  Liberally construing Brooks's Complaint as this Court must, Brooks has not alleged a plausible basis for his claims against the named Defendants.

## A.      Official Capacity Claims Against Warden Steberger

Brooks utilized a form Complaint, with attachments, to present his claims and checked boxes to indicate that his claims against Warden Steberger are brought in her individual and official capacities. (*See* Compl. at 2.)  Official capacity claims against individual government employees are indistinguishable from claims against the municipality that employs them, here, Lancaster County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.

---

[4] "[T]he Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until after sentence and conviction." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (internal quotations omitted).  Since Brooks is a pretrial detainee, his claims are governed by the Due Process Clause of the Fourteenth Amendment. *See id.* at 166.  To state a Fourteenth Amendment claim based on the failure to provide medical care, a pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citation omitted).  "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations and citation omitted).

658, 690 n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be

treated as a suit against the entity." *Id* at 166 (citation omitted).  Thus, to the extent Brooks

raises constitutional claims against Warden Steberger in her official capacity, such claims are, in

essence, claims against Lancaster County.

   To plead a basis for municipal liability under § 1983, a plaintiff must allege that the

municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436

U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that

custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation

omitted).  "'Policy is made when a decisionmaker possess[ing] final authority to establish

municipal policy with respect to the action issues an official proclamation, policy, or edict.'"

*Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of

Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven

by showing that a given course of conduct, although not specifically endorsed or authorized by

law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v.

Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)) (citation omitted)).  For a custom to be the

proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of

similar unlawful conduct in the past, failed to take precautions against future violations, and that

its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations

omitted).  In other words, "[c]ustom requires proof of knowledge and acquiescence by [a

municipal] decisionmaker." *McTernan*, 564 F.3d at 658 (citations omitted); *see also Baker v.

Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiff

"must show that a policymaker for the Township authorized policies that led to the violations or

permitted practices that were so permanent and well settled as to establish acquiescence")
(citations omitted).

To the extent Brooks seeks damages from Warden Steberger in her official capacity
based on a constitutional violation, he has failed to allege facts that support *Monell* liability.
Brooks has not pled a municipal policy or custom with respect to an alleged constitutional
violation, or that such policy or custom caused a constitutional violation.  Accordingly, the
official capacity claims against Warden Steberger are not plausible and will be dismissed without
prejudice.

**B.      Individual Capacity Claims Against Warden Steberger**

In a § 1983 action, the personal involvement of each defendant in the alleged
constitutional violation is a required element, and, therefore, a plaintiff must allege how each
defendant was involved in the events and occurrences giving rise to the claims.  *See Rode*, 845
F.2d at 1207.  Furthermore, "[s]uits against high-level government officials must satisfy the
general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir.
2017).  There are "two general ways in which a supervisor-defendant may be liable for
unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d
307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).
First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences,
established and maintained a policy, practice or custom which directly caused [the] constitutional
harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586
(3d Cir. 2004) (alteration in original)).[5]  "Second, a supervisor may be personally liable under

---

[5] To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory
liability, a plaintiff must:

§ 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316 (internal quotations omitted). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker*, 50 F.3d at 1194; *Rode*, 845 F.2d at 1201 n.6).

Here, Brooks does not allege how Warden Steberger was personally involved in the events giving rise to his constitutional claims. He merely alleges that Warden Steberger is responsible for the overall operations and function of LCP, as well as for the welfare of the inmates. (Compl. at 4, 6.) As pled, the Complaint fails to provide any factual specificity as to Warden Steberger's personal involvement in an alleged constitutional violation. Additionally, Brooks has not plausibly alleged a claim of supervisory liability against Warden Steberger. He has not referenced a policy or custom with respect to an alleged constitutional violation, much less alleged sufficient facts for the court to conclude that any policy or custom caused a constitutional violation, or that Warden Steberger participated in a constitutional violation,

---

(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.* "Failure to" claims, such as a failure to train, failure to discipline, or a failure to supervise are generally considered a subcategory of policy or practice liability. *Barkes*, 766 F.3d at 316-17 (citation omitted).

8

directed others to so, or, as the person in charge, had knowledge of and acquiesced to a constitutional violation.

Instead, Brooks seeks to hold Warden Steberger liable merely based on her supervisory role at LCP.  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 274 (E.D. Pa. 2022) (allegations that a supervisor-defendant was a Lieutenant in the Special Investigations Unit and that other defendants reported to him were not enough to support a plausible claim for supervisory liability); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").  Thus, Brooks's individual capacity claims against Warden Steberger are implausible as pled.  Accordingly, these claims will be dismissed without prejudice.

C.      **Individual Capacity Claims Against PrimeCare**[6]

---

[6] Brooks checked both the official capacity and individual capacity boxes with respect to his claims against PrimeCare as well.  (*See* Compl. at 2.)  Because an official capacity claim is treated as a suit against the entity, *Graham*, 473 U.S. at 165-66, and Brooks asserts a direct claim against PrimeCare, as discussed more fully in this section, naming that entity in its official capacity as well is redundant.  Accordingly, the official capacity claim against PrimeCare is dismissed with prejudice.

Brooks's claims against PrimeCare also cannot proceed as pled.  PrimeCare, as the private corporation under contract to provide medical services at LCP, may be liable under § 1983 in certain circumstances.  The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"  *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)).  Rather, in order to hold a private healthcare company like PrimeCare liable for a constitutional violation under § 1983, a plaintiff must allege the provider had "a relevant [] policy or custom, and that the policy caused the constitutional violation [he] allege[s]."  *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (internal quotations, alterations, and citation omitted)).[7]

Brooks has not tied his allegations of deliberate indifference to his serious medical needs to a custom or policy of PrimeCare.  Further, generalized allegations of insufficient staffing fail

---

[7] A plaintiff may also state a basis for liability against an entity like PrimeCare by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations."  *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).  Brooks has not alleged that he was injured due to a failure to supervise, train, or discipline.

to state a claim where, as in this case, the Complaint does not allege a constitutional violation attributable to PrimeCare's policies or customs. *See Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim."). Accordingly, the claims against PrimeCare are not plausible as pled.

### D.     Negligence Claim

The Count understands Brooks to allege a state law negligence claim against Warden Steberger. Because the Court has dismissed his federal claims, the Court will decline to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). Accordingly, the only independent basis for jurisdiction over any state law claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). "This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Id.* (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) (citation omitted). "[T]he

domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship.  *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020) (same).

Brooks does not allege the citizenship of the parties.  Rather, he provides only Pennsylvania addresses for himself at LCP, and for the Defendants in Lancaster, Pennsylvania. (*See* Compl. at 2.)  This suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens.  Brooks has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. Accordingly, Brooks's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

## IV.    CONCLUSION

As set forth more fully above, Brooks's individual and official capacity claims against Warden Steberger will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  The claims against PrimeCare also will be dismissed without prejudice pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, with the exception of the official capacity claims which will be dismissed with prejudice.  All state law claims will be dismissed without prejudice for lack of jurisdiction.  Brooks will be granted leave to file an amended complaint to attempt to cure the defects identified by the Court.

Brooks's motion for appointment of counsel (ECF No. 3), is denied without prejudice at this time as premature.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.