# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CORRY M. BROOKS,** : | |
|     **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 23-CV-4535** |
| : | |
| **CHERYL STEBERGER,** *et al.*, : | |
|     **Defendants.** : | |

## MEMORANDUM

**PADOVA, J.**                                                                                                       **MARCH 19, 2024**

Currently before the Court is the Amended Complaint of *pro se* Plaintiff Corry M. Brooks, a pretrial detainee currently confined at Lancaster County Prison ("LCP"). For the following reasons, the Court will dismiss the Amended Complaint without prejudice. Brooks will be given the opportunity to file a second amended complaint if he can cure the deficiencies noted by the Court.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

Brooks initiated this civil action against Warden Cheryl Steberger and PrimeCare Medical, Inc. ("PrimeCare"), claiming that his constitutional rights were violated in July 2023 when LCP's water supply became contaminated, he fell ill as a result, and he was not treated adequately by the prison's medical staff. (*See* ECF No. 2 at 1-17.) By Memorandum and Order dated January 4, 2024, the Court granted Brooks leave to proceed *in forma pauperis* and dismissed his Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (ECF Nos. 7, 8.) The Court determined, *inter alia*, that Brooks failed to

---

[1] The allegations set forth in this Memorandum are taken from the Amended Complaint. (*See* ECF No. 11.) The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

allege how Warden Steberger was personally involved in the events giving rise to his constitutional claims, as he merely alleged that Warden Steberger is responsible for the welfare of the inmates and the overall operations and functions of LCP.  (*See* ECF No. 7 at 8.)  Furthermore, the Court found that Brooks did not plausibly plead a claim of supervisory liability against Warden Steberger.  (*Id.* at 8-9.)  Brooks's claims against PrimeCare also were dismissed because Brooks failed to tie his allegations of deliberate indifference to his serious medical needs to a custom or policy of PrimeCare.  (*Id.* at 10.)  Additionally, Brooks's negligence claim was dismissed without prejudice for lack of subject matter jurisdiction.  (*Id.* at 11-12.)  Brooks was given thirty-days leave to file an amended complaint.  (ECF No. 8.)  He later sought an extension of time, which was granted.  (ECF Nos. 9, 10.)  On March 4, 2024, Brooks filed the Amended Complaint that is presently before the Court.  (ECF No. 11.)

Brooks again claims that his Fourteenth Amendment rights were violated between July 22 and July 28, 2023, on the G-2 housing unit of LCP, when he fell ill as a result of the prison's water support becoming contaminated and was not treated adequately by the prison's medical staff.  (Am. Compl. at 5, 9.)  As alleged, Brooks filled out a sick call request on Monday, July 24, 2023 at 1:16 p.m., and "the staff made the telephone call to the medical department" sometime in the middle of the week.  (*Id.* at 11.)  Brooks was escorted to the medical department between 2 and 4 p.m. on July 28, and "was then transported to . . . Lancaster General Hospital for further evaluation."  (*Id.*)  Brooks currently names as Defendants Warden Steberger and PrimeCare, as well as Nurse Jane Doe and Lori Hensley, both of whom are alleged to be PrimeCare employees.  (*Id.* at 3-4.)  Steberger and PrimeCare are named in their individual capacities, while Jane Doe and Hensley are named in their individual and official capacities.  (*Id.*)

Brooks describes the progression of his illness as follows:

> The Plaintiff began experiencing a severe headache, which then progressed from alternating symptoms of rapid chills on to profuse sweating for hours. With each of these symptoms, Plaintiff was delirious, had a loss of balance, loss of appetite, and lost 10-15 pounds. He was also coughing, vomiting, and had diarrhea, which increased with each passing day untreated. [Plaintiff] was very weak and unable to move. Other inmates became aware of his sickness and informed staff of the seriousness of his symptoms. The Housing Unit Counselor, Mr. Mosely, was notified, which he then related to the prison investigator, Mr. Hackler, and was told of the Plaintiff's decline in health. The investigator spoke to the medical staff and requested that [Plaintiff] be evaluated. With the lack of essential medical supplies to test him, it was then determined by medical personnel, Ms. Storm, to have the Plaintiff admitted to Lancaster General Hospital to be given proper medical care. After lab work and x-ray results, the physician determined that [Plaintiff] had pneumonia/legionella and was prescribed two antibiotics.

(*Id.* at 11.)

With regard to each of the Defendants specifically, Brooks again alleges that Warden Steberger is responsible for the overall operations and function of LCP, as well as for the welfare of the inmates. (*Id.* at 5.) He claims that Warden Steberger "acted with gross negligence by knowingly allowing the [facility's] water system to become contaminated." (*Id.* at 8.) According to Brooks, Warden Steberger "was aware of the untreated/unfiltered water system, and the risks to the facility" and "refused to put out a prompt notice to try and prevent anyone from becoming sick." (*Id.* at 5, 8.) Brooks further contends that Warden Steberger failed to purchase "the appropriate equipment and solutions" and "failed to hire any services to provide the prison with clean water in time before . . . [he] became sick." (*Id.* at 5.)

With regard to PrimeCare, Brooks claims that PrimeCare "failed to train and hire staff in the facility to keep up with the demand of the medical sick call requests by inmates. Their custom is to tell inmates that they are dehydrated, give them Motrin and Gatorade, and wait to see if symptoms worsen." (*Id.* at 5.) Brooks asserts that PrimeCare acted with deliberate

3

indifference by training its employees to treat inmates who present with flu-like symptoms with Motrin and Gatorade and failing to conduct tests. (*Id.* at 8.)

Brooks contends that Defendant Jane Doe was hired and trained by PrimeCare. (*Id.* at 6.) He claims that she "came down to housing unit G-2" because Brooks became severely ill. (*Id.*) Due to her training "and the custom of the medical department, she failed to test the Plaintiff upon his request to do so and only offered him Gatorade, bottled water, and Motrin which was insufficient to treat pneumonia/legionella which was what further testing discovered later on." (*Id.*) Brooks claims that he informed Nurse Jane Doe that he was not suffering from a normal cold or flu "and requested to be tested." (*Id.* at 9.)

Brooks also alleges that Defendant Hensley is a provider for PrimeCare at LCP who failed to supervise, train, and properly discipline the medical staff "by training Nurse Jane Doe to only give inmates Motrin and Gatorade and to tell them they are dehydrated." (*Id.* at 6.) Brooks contends that Defendant Hensley acted with deliberate indifference when training the medical staff to treat inmates with Motrin and Gatorade as if they were dehydrated, without further testing. (*Id.* at 9.)

According to Brooks, he continues to suffer the physical and mental effects of his illness. (*Id.* at 12.) Brooks seeks monetary damages for his claims. (*Id.*)

## II.   STANDARD OF REVIEW

Because Brooks has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the

Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). "At this early stage of the litigation," the Court will "accept the facts alleged in [the *pro se*] complaint as true," draw "all reasonable inferences in [the plaintiff's] favor, and ask only whether [the] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (internal quotations omitted)). Liberal construction of a complaint "means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006)).

### III. DISCUSSION

#### A. Federal Claims

Brooks primarily asserts constitutional claims based on his exposure to contaminated water at LCP and his resultant illness. The vehicle by which constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Even under a liberal construction of the allegations in the Amended Complaint, however, Brooks has not alleged a plausible basis for his constitutional claims against the named Defendants, as explained below.

##### 1. Conditions of Confinement Claims

The Court understands Brooks to present conditions of confinement claims against Warden Steberger based on his exposure to contaminated water at LCP. The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective.") (citation omitted). Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" that they become excessive violate the Fourteenth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (quotation omitted).

6

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component "requires an inquiry into whether 'the deprivation [was] sufficiently serious'" whereas the subjective component "asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (alterations in original); *Bell*, 441 U.S. at 538-39 & n.20. To satisfy the subjective component of the analysis in this Circuit, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Seiter*, 501 U.S. at 298-99; *Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). "A defendant may be liable if he is aware of a condition that poses an excessive risk and he fails to 'adequately respond to that risk.'" *Bakhtiari v. Madrigal*, 841 F. App'x 457, 459-60 (3d Cir. 2021) (*per curiam*) (quoting *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019)).

The Court will assume *arguendo* that Brooks has met the objective component of the analysis. *See, e.g., Williams v. Quiros*, No. 22-1367, 2023 WL 4627649, at *5 (D. Conn. July 19, 2023) (finding objective prong met because plaintiff alleged that legionella bacteria was present in his housing unit and that he was made ill). As pled, however, the Amended Complaint fails to allege facts sufficient to meet the subjective component of the unconstitutional punishment analysis. Brooks alleges that Warden Steberger "knowingly allow[ed] the [facility's] water system to become contaminated." (Am. Compl. at 8.) According to Brooks, Warden Steberger "was aware of the untreated/unfiltered water system, and the risks to the

7

facility" and "refused to put out a prompt notice to try and prevent anyone from becoming sick." (*Id.* at 5, 8.)  Finally, Brooks contends that Warden Steberger failed to purchase "the appropriate equipment and solutions" and "failed to hire any services to provide the prison with clean water in time before . . . [he] became sick." (*Id.* at 5.)  The factual basis for Brooks's allegation that Warden Steberger knew the water supply at LCP was contaminated but disregarded this risk is unclear.  Specifically, the Amended Complaint does not explain, even in broad strokes, when or how Steberger allegedly became aware of the situation or what she did or did not do to create the risk.  For instance, there are no allegations in the Amended Complaint about what Steberger did or did not do regarding water management at the prison that could give rise to a plausible inference that inmates would be at risk of contracting legionella.  Nor does the Amended Complaint set forth specific factual allegations from which one could infer that Steberger had reason to know that the water at the prison was contaminated but opted to do nothing.  Instead, Brooks's allegations of Warden Steberger's knowledge of the risk are merely conclusory.  *See Gerholt v. Wetzel*, 858 F. App'x 32, 35 (3d Cir. 2021) (*per curiam*) ("The amended complaint, however, does not contain sufficient factual matter from which the Court may conclude that defendants were aware that the allegedly defective doors could expose Gerholt to 'an excessive risk' of harm and consciously disregarded that risk."); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Without sufficient factual allegations to support his conclusory allegation of knowledge, Brooks has failed to allege a plausible claim that a constitutional violation occurred.

8

Brooks also alleges that Warden Steberger is responsible for the overall operations and function of LCP, as well as for the welfare of the inmates. (Am. Compl. at 5.) To the extent that Brooks named Warden Steberger as a Defendant simply due to her high-ranking position, this is not sufficient to state a plausible claim. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677). As this Court previously explained, Warden Steberger cannot be held liable merely based on her supervisory role at LCP. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 274 (E.D. Pa. 2022) (finding plaintiff, who only alleged that supervisor-defendant was a Lieutenant in the Special Investigations Unit and that other defendants reported to him, failed to support a plausible claim for supervisory liability); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and

maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, 'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Id.*

Here, Brooks has not plausibly alleged a claim of supervisory liability against Warden Steberger. He has not plausibly referenced a policy or custom with respect to an alleged constitutional violation, much less alleged sufficient facts for the court to conclude that any policy or custom caused a constitutional violation, or that Warden Steberger participated in a constitutional violation, directed others to so, or, as the person in charge, had knowledge of and acquiesced to a constitutional violation.

For the foregoing reasons, Brooks's claims against Warden Steberger are implausible as pled. Accordingly, these claims will be dismissed without prejudice.

        **2.**     **Deliberate Indifference to Medical Needs Claims**

The Court understands Brooks also to assert constitutional claims based on inadequate medical care allegedly caused by training deficiencies attributable to Lori Hensley and PrimeCare. To state a Fourteenth Amendment claim based on the failure to provide medical care, a pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis). A prison official is not deliberately

indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations and citation omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed") (quotation and citation omitted). Allegations of medical malpractice, negligence, and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (collecting cases); *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

"[A] private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, to hold a private healthcare company like PrimeCare liable for a constitutional violation under § 1983, a plaintiff

11

must allege that the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

If the alleged policy or custom at issue is a failure to train or supervise, as Brooks alleges here, the plaintiff must show that this failure "amounts to deliberate indifference to the rights of persons with whom the . . . employees will come into contact." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotation omitted). "[T]he failure to train an employee must be a choice on the part of the supervisor or supervising entity knowing that the training that is (or is not) being provided is not sufficient for the employees and the choices they encounter on the job." *Curran v. Venango Cnty.*, No. 23-0019, 2023 WL 8439274, at *9 (W.D. Pa. Nov. 2, 2023) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-90 (1989)), *report and recommendation adopted*, 2023 WL 8061513 (W.D. Pa. Nov. 21, 2023). A plaintiff claiming a failure to train must allege "a pattern of similar constitutional violations by untrained employees that puts . . . decisionmakers on notice that a new program is necessary." *Johnson*, 975 F.3d at 403 (internal quotations omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights—i.e., to show that the need for more or different training was so obvious." *Id.* (internal quotations and alterations omitted). "Only in the narrowest of circumstances can a failure to train or supervise

12

[be] 'said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations.'" *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014)), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).  Additionally, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."  *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable") (alterations in original)).

   Brooks does not specify when Nurse Jane Doe evaluated him in his cell, but contends that her offer of Gatorade, bottled water, and Motrin was insufficient.  (*See* Am. Compl. at 6, 9.)  Brooks implies that he should have received additional medical care beyond what was provided by Nurse Jane Doe because he informed her that he was not suffering from a normal cold or flu "and requested to be tested."  (*Id.* at 9.)  However, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."  *Hayes*, 802 F. App'x at 88; *see also Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) (*per curiam*) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979))); *Gomez v. Cullen*, No. 21-2776, 2022 WL 1183713, at *2 (3d Cir. Apr. 21, 2022) (*per curiam*) ("[An inmate's]

disagreement with the course of treatment or his speculation as to what might have helped his condition is insufficient to support an Eighth Amendment deliberate indifference claim.") (citing *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)).  Assuming that Brooks's illness rises to the level of serious, his allegations make clear that he received medical treatment.  Nurse Doe provided Brooks with treatment for symptoms of an illness that the Amended Complaint suggests she thought was dehydration from a cold or the flu.  It is not clear how long Nurse Doe was involved in Brooks's care, but it is apparent that he was taken to the hospital when he continued to decline.  Brooks has not alleged facts from which one could infer that, under the circumstances, Nurse Doe knew at the time of a need for treatment beyond what was offered, or that how she treated Brooks could be considered anything more than negligence, if that.  Accordingly, Brooks's claims against Nurse Jane Doe will be dismissed.

Since the Amended Complaint does not support an inference that the manner in which Brooks was treated for the four days between when he submitted a sick call slip and when he was taken to the hospital amounts to deliberate indifference, his related failure to train claims against PrimeCare and Hensley also fail because the alleged training failures described in the Amended Complaint did not cause a constitutional violation.

The failure to train claims fail for additional reasons too.  Brooks claims that PrimeCare "failed to train and hire staff in the facility to keep up with the demand of the medical sick call requests by inmates.  Their custom is to tell inmates that they are dehydrated, give them Motrin and Gatorade, and wait to see if symptoms worsen." (Am. Compl. at 5.)  He also claims that PrimeCare employees fail to conduct tests. (*Id.* at 8.)  However, nothing in the Amended Complaint describes a pattern of violations that would support a failure to train claim here.  First, it appears that the alleged "custom" described in the Amended Complaint is predicated solely on

one incident — what happened to Brooks. Notably, nothing in the Amended Complaint describes a pattern of similar incidents that would have alerted decisionmakers at PrimeCare that the need for additional training was so obvious. Additionally, Brooks does not allege any facts suggesting that Defendant Hensley is a decisionmaker with PrimeCare. In sum, Brooks has not stated a deliberate indifference claim against PrimeCare or Defendant Hensley. *See, e.g., Bennett v. Shoemaker*, No. 22-0354, 2023 WL 5434769, at *4 (M.D. Pa. Aug. 23, 2023) (dismissing failure to train claim where plaintiff alleged "inadequate training or hiring with respect to dental matters" because plaintiff failed to adequately support his allegation with facts and merely presented a legal conclusion). Further, generalized allegations of insufficient staffing fail to state a claim where, as in this case, the Amended Complaint does not allege a constitutional violation attributable to PrimeCare's policies or customs. *See Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim." (alteration in original). Accordingly, Brooks's claims against PrimeCare and Lori Hensley are not plausible as pled.[2]

---

[2] Brooks has named Nurse Jane Doe and Lori Hensley in their individual and official capacities. To the extent that Brooks asserts claims against employees of PrimeCare in their "official capacities," such claims are not cognizable because PrimeCare is a private entity. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit"). Even if official capacity suits against individuals who work for private companies are cognizable, the suit would, in effect, be one against the company for whom that individual works. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Since Brooks has named PrimeCare as a Defendant, the official capacity claims against Nurse Jane Doe and Lori Hensley are dismissed with prejudice as duplicative of the claim against PrimeCare. *See Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 437 n.171 (E.D. Pa. 2020), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023) (dismissing official capacity claim against employees of PrimeCare "as duplicative of the claims against . . . PrimeCare").

**B.     State Law Claims**

To the extent that Brooks seeks to present state law negligence claims, the Court lacks jurisdiction over those claims. Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required." *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). "This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Id.* (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) (citation omitted). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship. *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Brooks alleges that he and the individual Defendants are citizens of the United States, and he provides Pennsylvania addresses for himself and for the Defendants. (*See* Am. Compl. at 1, 3-6.) This suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Brooks has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. Accordingly, Brooks's state law claims will be dismissed without prejudice for lack of jurisdiction.

## IV.  CONCLUSION

As set forth more fully above, Brooks's official capacity claims against Nurse Jane Doe and Lori Hensley will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. The conditions of confinement claim against Warden Steberger, as well as the deliberate indifference to medical needs claims against PrimeCare, Nurse Jane Doe, and Lori Hensley, will be dismissed without prejudice pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. All state law claims will be dismissed without prejudice for lack of jurisdiction. Brooks will be granted one final opportunity to file a second amended complaint to attempt to cure the defects identified by the Court.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.